## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

|  |  |
|---|---|
| AMIR MOHAMED MOHAMED MOHAMED ABOUELFETOUH ELSEHMAWY, MD, and RANA TAHSEEN EL-JARRAH, MD | ELECTRONICALLY FILED 2/26/2025 U.S. DISTRICT COURT Northern District of WV |

AMIR MOHAMED MOHAMED MOHAMED
ABOUELFETOUH ELSEHMAWY, MD, and
RANA TAHSEEN EL-JARRAH, MD                )

            Plaintiffs,                )

            -against-                )

MARCO A. RUBIO, in his official capacity            ) CIVIL ACTION NO. 1:25-cv-15 Kleeh
as U.S. Secretary of State; JENNIFER L.            )
WERONSKI, in her official capacity as            )
Chief, Waiver Review Division, U.S.            )
Department of State; KRISTI NOEM,            ) COMPLAINT FOR WRIT OF
in her official  capacity as the United States            ) MANDAMUS AND RELIEF
Secretary of Homeland Security; KIKA SCOTT,            ) UNDER ADMINISTRATIVE
in her official capacity as the Director of U.S.            ) PROCEDURE ACT
Citizenship and Immigration Services (Acting);            )
TRACY TARANGO, in her official            )
capacity as the U.S. Citizenship and            )
Immigration Services, Director of the            )
California Service Center; and            )
PAMELA J. BONDI, in her official            )
capacity as the U.S. Attorney General,            )
            Defendants.                )

Plaintiffs by their undersigned lawyer alleges as follows:

## I.    INTRODUCTION

1.    This is an action to compel the Defendants and those acting under them to take all appropriate action to adjudicate Plaintiffs Amir Mohamed Mohamed Mohamed Abouelfetouh Elsehmawy, MD's ("Dr. Elsehmawy") and Rana Tahseen El-Jarrah, MD's ("Dr. El-Jarrah") Application for Waiver of the Foreign Residence Requirement ("Form I-612," "I-612," or "waiver application") without further delay.

2.      Plaintiffs properly filed an I-612 exceptional hardship waiver application with the

Defendant U.S. Citizenship and Immigration Services ("USCIS") on May 25, 2023.  USCIS

issued a receipt notice indicating it received the application on May 26, 2023.  As of the present

time, USCIS has not yet passed the application on to Defendant U.S. Department of State's

("State Department") Waiver Review Division ("DOSWRD") for recommendation.  The

Plaintiffs' application remains within the jurisdiction of the Defendants, who have improperly

withheld action on the application for an unreasonable length of time, to Plaintiffs' detriment.

3.      Those in J-1 status like Dr. Elsehmawy are at a particular disadvantage in terms of

delay compared to others seeking immigration benefits who can extend lawful status or enter a

period of authorized stay and continue working.  Dr. Elsehmawy's status ends on June 30, 2025,

when he completes his fellowship in family medicine, thereby completing his exchange program

after which point he would need to depart the United States.  Nor can Dr. Elsehmawy change to

another nonimmigrant visa category per 8 U.S.C. § 1258(a)(2)'s restrictions on those in J-1

status for graduate medical education.[1]

4.      There is no apparent method or order for when Defendants decide to adjudicate

these types of waivers.  For example, there are waiver applications that were filed after Dr.

Elsehmawy's Form I-612 that have been sent to the State Department for recommendation or

approved by USCIS before his application.[2]   According to USCIS, its current processing time

---

[1] T and U visas for victims of trafficking and crime are the only exception, but Dr. Elsehmawy is
ineligible for those categories.
[2] *See, e.g.*, WAC2321550364 (Egyptian hardship waiver, filed May 31, 2023, sent to DOS
October 23, 2024, and final approval notice issued November 20, 2024); WAC2321550205
(Egyptian hardship waiver, filed May 31, 2023, sent to DOS October 23, 2024, and final
approval notice issued November 20, 2024); WAC2326650166 (Irish hardship waiver, filed
August 1, 2023, sent to DOS September 30, 2024, and final approval notice issued November 22,
2024); WAC2328250082 (Peruvian hardship waiver, filed August 22, 2023, sent to DOS
December 12, 2024); WAC2330450114 (Canadian hardship waiver, filed September 18, 2023,

for Form I-612 waiver applications is an unreasonable eighteen and a half months. *See* USCIS, *Check Case Processing Times*, https://egov.uscis.gov/processing-times/ (last accessed February 20, 2025) (indicating that eighty percent of Form I-612 waiver applications are approved within that period at the California Service Center, where Plaintiffs filed their waiver application). DOS estimates that its processing time for hardship waiver applications takes up four to six months within that eighteen and a half month processing time. *See* DOS Bureau of Consular Affairs, *Apply for a Waiver of the Exchange Visitor Two-Year Home-Country Physical Presence Requirement*, https://travel.state.gov/content/travel/en/us-visas/study/exchange/waiver-of-the-exchange-visitor/how-to-apply-waiver.html (last accessed February 20, 2025) (detailing exceptional hardship processing times under "STEP 6 – Processing Times"). USCIS does not provide an estimate for how long it takes to approve waiver applications that DOS has given a favorable recommendation.

5.      USCIS is responsible for the present unreasonable delay in Plaintiffs' waiver application. The application has been with the Agency for over twenty months without any evidence of meaningful review. USCIS has more than exhausted its self-reported eighteen-month processing time without acting on Plaintiffs' waiver application.

6.      The State Department is responsible for the present unreasonable delay as well, through its statutory role in this waiver application process and its policies and procedures. By statute, the State Department must make a recommendation to USCIS before USCIS can render its decision on the application, meaning that any additional delay by the State Department would

---

sent to DOS December 11, 2024, and final approval notice issued February 7, 2025); WAC2401550056 (Indian hardship waiver, filed October 17, 2023, sent to DOS December 3, 2024, and final approval notice issued January 17, 2025); WAC2401750047 (German hardship waiver, filed October 19, 2023, sent to DOS December 15, 2024, and final approval notice issued January 14, 2025).

add to the overall delay created by USCIS.  Additionally, the Department's policy to limit the duration of J visa status to one-year increments, coupled with its policy to consider a Form I-612 waiver application as evidence of immigrant intent, forces applicants to wait until their last program extension to apply for a waiver—for if they file too early, any J visa extension they request after the waiver application could be denied due to perceived immigrant intent.  These policies had a direct bearing on the time that Plaintiffs could file—just over a year before Dr. Elsehmawy's status was scheduled to expire.  And, because of the average eighteen and a half month processing time, the State Department's policies have created an unreasonable delay that threatens to take away Plaintiffs' statutory right to seek a waiver of the two-year foreign residence requirement before Dr. Elsehmawy's visa expires.

7.      Plaintiffs have a significant interest in this application.  Among other considerations, Dr. Elsehmawy wishes to continue practicing medicine in the United States, and his U.S. citizen wife, Dr. El-Jarrah, would be subject to exceptional hardships if her husband were forced to depart the United States, whether she remained here in the United States or accompanied him to his native Egypt.

8.      At present, the Plaintiffs' application remains within the jurisdiction of the Defendants, who have improperly withheld action on the application for an unreasonable length of time, to the detriment of the Plaintiffs.

## II.      JURISDICTION

9.      As stated *supra*, this is an action to compel the Defendants to perform a duty owed to Plaintiffs.  The action arises under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-559, 701-706.

10.     Subject matter jurisdiction is pursuant to 28 U.S.C. § 1331, 8 U.S.C. § 1329, and

5 U.S.C. §§ 702, 555(b).  Jurisdiction is further conferred by 28 U.S.C. § 1361 for the requested

writ of mandamus and supplemented by 28 U.S.C. § 1651 to allow for any other appropriate

remedy.  Moreover, this Court has the authority to grant affirmative relief under the APA.  5

U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld or

unreasonably delayed . . . .").

11.     This Court has jurisdiction under the general federal-question statute because 28

U.S.C. § 1331 is the appropriate source of jurisdiction for claims under the APA so long as the

claim arises under the Constitution or federal law.  28 U.S.C. § 1331 (saying that the plaintiff

must assert a cause of action "arising under the Constitution, laws, or treaties of the United

States"); *see also Trudeau v. FTC*, 456 F.3d 178, 185 (D.C. Cir. 2006) (finding that district

courts have jurisdiction under the APA in conjunction with 28 U.S.C. § 1331 to review the

plaintiff's complaint for declaratory and injunctive relief against a federal agency).

12.     Here, a federal question arises on whether the Defendants are complying with

their statutory duties under 8 U.S.C. § 1182(e) and their duty not to withhold or unreasonably

delay administrative action under the APA regarding Plaintiffs' application for an immigration

benefit.  The Defendants' continued delay is the primary basis for this action.

13.     The APA requires USCIS to carry out its duties within a reasonable time.  5

U.S.C. § 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties

or their representatives and *within a reasonable time, each agency shall proceed to conclude a

matter presented to it*" (emphasis added).  As a federal agency, USCIS is subject to 5 U.S.C. §

555(b).  And, under both 5 U.S.C. §§ 555(b) and 706(1), a court can review an agency's

unreasonable delay.  *See Telecomms. Research & Action Ctr. v. Fed. Commc'ns Comm'n*, 750

F.2d 70, 77 (D.C. Cir. 1984) [hereinafter "*TRAC*"] (citations omitted) ("While the APA

unquestionably does not confer an independent grant of jurisdiction, . . . section 706(1) coupled

with section 555(b) does indicate a congressional view that agencies should act within

reasonable time frames and that court's [*sic*] designated by statute to review agency actions may

play an important role in compelling agency action that has been improperly withheld or

unreasonably delayed."); *see also Costle v. Pacific Legal Foundation*, 445 U.S. 198, 220 n. 14

(1980) (noting that judicial review of prolonged agency inaction may be obtained under 5 U.S.C.

§ 706(1)).

    14.    Section 242 of the INA, 8 U.S.C. § 1252, does not deprive this Court of

jurisdiction.  INA § 242(a)(5) provides that "a petition for review  filed with an appropriate court

of appeals in accordance with this section, shall be the sole and  exclusive means for judicial

review of an order of removal entered or issued under any provision  of this Act[.]"  As the

present action does not seek review of a removal order, but is simply an  action to compel USCIS

to adjudicate the Plaintiffs' unreasonably delayed application, this Court retains original

mandamus jurisdiction under 28 U.S.C. § 1361.  *See Liu v. Novak*, 509 F. Supp.  2d 1, 5 (D.D.C.

2007) ("[T]here is . . . significant district court authority holding that [8 U.S.C.] §

1252(a)(2)(B)(ii) does not bar judicial review of the pace of application processing or the failure

to take action.").

    15.    Furthermore, INA § 242(a)(2)(B) provides that no court shall have jurisdiction to

review either (i) "any judgment regarding the granting of" various forms of relief from removal,

or (ii) "any other decision or action of the Attorney General or the Secretary of Homeland

Security the authority for which is specified . . . to be in the discretion of the Attorney General or

the Secretary of Homeland Security[.]"  Because adjudication of a properly filed I-612

exceptional hardship waiver application is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in the discretion of the Attorney General or the Secretary of Homeland Security, the Court retains original mandamus jurisdiction over this claim.  *See Liu*, 509 F. Supp. 2d at 9 (holding that "the Court does have jurisdiction over plaintiff's APA claim that defendants have unreasonably delayed adjudicating his application"); *see also Villa v. U.S. Dep't of Homeland Sec.*, 607 F. Supp. 2d 359, 366 (N.D.N.Y. 2009) ("[T]he Defendant has the discretionary power to grant or deny applications, but it does not have the discretion as to whether or not to decide at all."); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 739 (E.D. Va. 2008) ("[T]he Court retains jurisdiction under the APA to determine whether the Secretary [of Homeland Security and the Department of State] has unlawfully delayed or withheld final adjudication of a status adjustment application.").  Numerous federal district courts have ruled that adjudication of a properly filed adjustment of status application, including completion of all necessary background checks, is a purely ministerial, non-discretionary act that the Government is under obligation to perform in a timely manner.  *See, e.g.*, *Shahid Khan v. Scharfen*, No. 08-1398, 2009 WL 941574, at *3-7 (N.D. Cal. Apr. 6, 2009); *Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 546-48 (S.D.N.Y. 2008); *Jones v. Gonzales*, No. 07-20334-CIV, 2007 WL 1810135, *1-2 (S.D. Fla. June 21, 2007) ("[N]o agency responsible for resolving matters of public interest should be free to let those matters pend in perpetuity; otherwise would be to relieve the agency of its Congressionally-mandated duty to the public."). This decisional law concerning the delay in adjustment of status applications applies equally to a delay in the adjudication of an I-612 waiver application because the adjudication of a properly filed I-612 waiver application is neither a judgment regarding the granting of relief from removal nor a decision or action that is specified to be in the discretion of the Attorney General, the

7

Secretary of Homeland Security, or the Secretary of State.

16.     8 U.S.C. § 1571(b) provides: "it is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application. . . ." 8 U.S.C. § 1571(b) provides a meaningful standard for the pace of adjudication of adjustment of status applications.  *Huang v. Mukasey*, 545 F Supp 2d 1170 (W.D. Wash. 2008).  As of today, the adjudication of the application has dragged on for over twenty months.

17.     As set forth below, the delay in processing the Plaintiffs' properly filed application for an I-612 hardship waiver is unreasonable.

### III.    VENUE

18.     Venue is proper in the United States District Court for the Northern District of West Virginia under 28 U.S.C. § 1391(e)(1)(C) because this is an action against officers and agencies of the United States in their official capacities, brought in the district where the Plaintiffs reside, Morgantown, West Virginia, and no real property is involved in the action.

19.     The Defendant Marco A. Rubio is sued in his official capacity as the Secretary of the U.S. Department of State, a United States federal agency, and is a resident of Washington, D.C.  The Defendant Jennifer L. Weronski is sued in her official capacity as the Chief of the U.S. Department of State's Waiver Review Division, and is a resident of Washington, D.C.  The Defendant Kristi Noem is sued in her official capacity as the Secretary of the U.S. Department of Homeland Security and is a resident of Washington, D.C.  The Defendant Kika Scott is sued in her official capacity as the Acting Director of USCIS, a United States federal agency, and is a resident of Washington, D.C.  The Defendant Tracy Tarango is sued in her official capacity as the Director of the USCIS California Service Center, a United States federal agency.  The

8

Defendant Pamela J. Bondi is sued in her official capacity as the Attorney General of the United States, a United States federal office, and is a resident of Washington, D.C.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

20.    No exhaustion requirements apply to the Plaintiffs' complaint for a writ of mandamus and unreasonable delay under the APA.  The Plaintiffs are owed a duty: the adjudication of their properly filed I-612 exceptional hardship waiver application, which has been duly filed with USCIS.  The Defendants have unreasonably delayed and failed to adjudicate the Plaintiffs' application since the filing of same on May 25, 2023.  Plaintiffs have no other adequate remedy available for the harm they seek to redress: the failure of USCIS and DOS to process Dr. Elsehmawy's waiver application.

## V.    PARTIES

21.    Plaintiff Amir Mohamed Mohamed Mohamed Abouelfetouh Elsehmawy, MD, is a citizen of Egypt and a resident of West Virginia.  His address is: 2224 Suncrest Village, Morgantown, WV 26505.

22.    Plaintiff Rana Tahseen El-Jarrah, MD, is a U.S. citizen and a resident of West Virginia.  Her address is: 2224 Suncrest Village, Morgantown, WV 26505.

23.    Defendant Marco A. Rubio is the United States Secretary of State, the head of the United States Department of State, an agency of the United States.  He is named in his official capacity.  His address is: U.S. Department of State, 2201 C St. N.W., Washington, D.C. 20520-2204.

24.    Defendant Jennifer L. Weronski is the Chief of the Waiver Review Division of the Bureau of Consular Affairs of the United States Department of State, an agency of the United States.  This office is responsible for making recommendations on waivers pursuant to 8 U.S.C.

§ 1182(e).  She is named in her official capacity.  Her address is U.S. Department of State, 2201

C St. N.W., Washington, D.C. 20520-2204.

25.    Defendant Kristi Noem is the United States Secretary of the Department of

Homeland Security, an agency of the United States.  She is named in his official capacity.  Her

address is: U.S. Department of Homeland Security, Washington, D.C. 20528.

26.    Defendant Kika Scott is the Acting Director of the United States Citizenship and

Immigration Services, which is part of the Department of Homeland Security and is an agency of

the United States.  She is named in her official capacity.  Her address is: Office of the Director

MS 2000, U.S. Citizenship and Immigration Services, 20 Massachusetts Ave. N.W.,

Washington, D.C. 20529-2000.

27.    Defendant Tracy Tarango is the Director of the USCIS California Service Center,

an agency of the United States.  She is named in her official capacity.  Her address is: USCIS

California Service Center, P.O. Box 10129, Laguna Niguel, CA 92607-1012.

28.    Defendant Pamela J. Bondi is the Attorney General of the United States.  She is

named in her official capacity.  Her address is: U.S. Department of Justice, 950 Pennsylvania

Ave. N.W., Washington, D.C. 20530-0001.

## VI.    FACTS AND PROCEDURAL HISTORY

29.    Many foreigners come to the United States as J-1 exchange visitors ("J-1's").

This is a nonimmigrant (temporary) classification, as set forth in 8 U.S.C. § 1101(a)(15)(J).

30.    Under 8 U.S.C. § 1182(e), there are three ways that a J-1 can become subject to

the two-year foreign residence requirement: (1) the J-1 program is funded by the U.S.

Government or the J-1's Government; (2) the J-1 is engaged in training that is on the "Skills

List" for the home country; or (3) the J-1 is coming to the United States for graduate medical

education.  The foreign residence requirement prohibits a J-1 from doing certain things, such as applying for permanent resident status (green card), until he/she has either fulfilled the requirement by spending two years in his/her home country, or until he/she has obtained a waiver of the requirement.

31.     As described with greater specificity below, Dr. Elsehmawy became subject to the foreign residence requirement because he came to the United States in J-1 status to pursue graduate medical education.

32.     J-1's are issued a Form DS-2019 "Certificate of Eligibility for Exchange Visitor (J-1) Status" ("DS-2019") which identifies the J-1, their sponsoring program, and their start and end dates, among other things.  State Department regulations require that exchange visitor program sponsors request an allotment of DS-2019's each year.  22 C.F.R. § 62.12(d)(1).  The State Department by regulation retains the sole discretion to determine the number of DS-2019's that a program may have each year, meaning that program sponsors must issue new DS-2019's each year to avoid exceeding the next year's allotment.  *Id.*  This creates a system where a J-1 needs to renew their DS-2019 each year through their program sponsor.

33.     Dr. Elsehmawy's program sponsor is the Educational Commission for Foreign Medical Graduates (ECFMG).  Due to the State Department's DS-2019 allotment regulations, ECFMG has issued Dr. Elsehmawy a DS-2019 each year since July 2021.

34.     Under 8 U.S.C. § 1182(e), there are four ways that a J-1 can pursue a waiver of the foreign residence requirement (these are specified below).  The instant action concerns Dr. Elsehmawy's application for a waiver based on exceptional hardship his U.S. citizen wife would endure if he were compelled to fulfill the two-year foreign residence requirement in his native Egypt.  This kind of waiver application commences with the filing of a DS-3035 data sheet with

the State Department.  This is followed by the main application, which, in Dr. Elsehmawy's case, was submitted on Form I-612, with accompanying evidence, to the USCIS California Service Center.[3]

35.    Unlike virtually all other waiver application types in U.S. immigration law, this kind of waiver application is not adjudicated solely by the USCIS.  Instead, the waiver can be granted only if the State Department issues a favorable recommendation.  The State Department has publicly stated that the pendency of a waiver application is evidence of immigrant intent,[4] causing waiver applicants to wait until their last year of J-1 status to apply for a waiver.

36.    Dr. Elsehmawy first entered the United States in J-1 status on June 18, 2021, as a nonimmigrant exchange visitor under 8 U.S.C. § 1101(a)(15)(J).  His J-1 status is set to expire on June 30, 2025.

37.    Dr. Elsehmawy applied for a waiver of the J-1 foreign residence requirement because his relocation to Egypt for two years would impose exceptional hardships to his U.S. citizen wife, Dr. El-Jarrah.  She would face these hardships whether she remained here in the United States or relocated with her husband to Egypt.

38.    All applicants for a J-1 waiver must fill out an electronic Form DS-3035 on the State Department's website.  After completing the electronic Form DS-3035, the State Department's website generates (1) a "Waiver Review Division Case Number," (2) a "Waiver Review Division Barcode Page," (3) a "Third Party Barcode Page," (4) an electronic DS-3035 in PDF format with the applicant's information, (5) Supplementary Applicant Information Pages (if necessary), and (6) a "Packet Assembly Checklist" and "Instruction Sheet."

---

[3] I-612 hardship applications are now filed with the Texas Service Center in Irving, Texas.
[4] Based on a statement made by Diane Culkin, formerly of Private Sector Programs Division, at a conference.

39.     Applicants for a J-1 waiver are assigned a Waiver Review Division ("WRD") Case Number from the State Department, which is generated along with Form DS-3035.

40.     All applicants for a J-1 waiver must pay a $120 filing fee to the State Department for the DS-3035.  After creating the DS-3035 online, the applicant must send a hard copy of the form, plus fee, to a State Department lockbox in St. Louis, Missouri.

41.     For Dr. Elsehmawy's hardship waiver applications, the main application was filed with the USCIS California Service Center.  The application is filed on Form I-612 with accompanying evidence.

42.     All applicants for a J-1 waiver must also pay a filing fee to USCIS.  For Dr. Elsehmawy the fee was $930.

43.     On or around May 1, 2023, Dr. Elsehmawy, through counsel, filled out Form DS-3035 on the State Department's website to initiate the application process for a J-1 waiver.  The State Department assigned Dr. Elsehmawy's case WRD Case Number 1845448.

44.     The State Department also generated a "Waiver Review Division Barcode Page" for submission with Dr. Elsehmawy's waiver application.  Dr. Elsehmawy, through counsel, paid the $120 fee to the State Department via a law firm operating account check dated May 25, 2023.  The State Department Waiver Review Division received Dr. Elsehmawy's signed DS-3035 and the filing fee on June 8, 2023.

45.     On May 25, 2023, Dr. Elsehmawy, through counsel, filed his Form I-612 waiver application with the USCIS California Service Center.  Upon receipt of Form I-612, the application was assigned USCIS Case Number WAC-23-209-50207.

46.     Dr. Elsehmawy's I-612 materials included his WRD Case Number, 1845448.

47.     Dr. Elsehmawy is statutorily eligible to seek a waiver because compliance with

the foreign residence requirement would expose his U.S. citizen wife to exceptional hardships, in either travel alternative.

48.     Dr. Elsehmawy's hardship waiver application complied with all statutory and regulatory requirements specified by the Defendants.

49.     After submission of the application to USCIS, that agency must determine whether Dr. Elsehmawy met his burden of proof of exceptional hardship and then seek the recommendation of the DOSWRD.  There is no indication that such a recommendation has been sought, and to date, DOS has not made a recommendation to USCIS on Dr. Elsehmawy's exceptional hardship waiver application.

50.     The State Department is required to issue a recommendation in this case on the existing administrative record.  Specifically, 22 C.F.R. § 41.63(b)(2)(ii) states:

> (b) Request for waiver on the basis of exceptional hardship or probable persecution on account of race, religion, or political opinion.
>
> * * *
>
> (ii) With respect to those cases in which the Secretary of DHS has determined that compliance with the two-year home-country residence and physical presence requirement would impose exceptional hardship upon the spouse or child of the exchange visitor, the Waiver Review Division *shall* review the program, policy, and foreign relations aspects of the case, make a recommendation, and forward it to the appropriate office at DHS. . . .

22 C.F.R. § 41.63(b)(2)(ii) (emphasis added).

51.     USCIS will then make its final determination on whether compliance with the two-year home-country residence and physical presence requirement would expose Dr. Elsehmawy's U.S. citizen wife, Dr. El-Jarrah, to exceptional hardships.  The emphasized word "shall" means that DOS is required to issue a recommendation on this case.

52.     The current delay in this case makes it clear that the two agencies are not properly exchanging information in a timely manner.  The result is both agencies failing to properly carry out their nondiscretionary duties to adjudicate this kind of case in timely fashion.

53.     To date, there has been no further known action on the case by either agency.  The application has been with the Defendants for over twenty months.

54.     Further delay in the adjudication of the application could result in Dr. Elsehmawy running out of nonimmigrant visa status, causing the Plaintiffs, and their employer and patients, professional and personal harm.

55.     Nonimmigrant visa holders who, like Dr. Elsehmawy, are sponsored by the ECFMG are typically granted renewal of their J-1 visa status in one-year increments, as explained above.  22 C.F.R. § 62.12(d)(1).  If the Defendants continue to regularly delay the processing of waiver applications, most ECFMG-sponsored physicians will be unable to file such applications without the risk of overstaying their visa status.  This would result in penalties including future inadmissibility to the United States.  Consequently, these delays function to remove a congressionally mandated waiver type from a class of people, in this case nonimmigrant physicians.

56.     Moreover, J-1's are at a disadvantage when compared to others applying for immigration benefits.  For example, asylum applicants are granted a period of authorized stay and can receive work authorization after 180 days, and those who have filed for permanent residency are granted lawful status while the application is pending and can request work authorization.  J-1's, however, are not given lawful status while their waiver applications are pending and must leave if they reach their J-1 program end date.  J-1 noncitizen physicians, like Dr. Elsehmawy, who are sponsored by ECFMG are limited to a seven-year cap of extensions in

15

J-1 status.  They are also not able to gain work authorization, aside from working within their authorized J-1 program.  J-1 visa holders also cannot change status to most other nonimmigrant visa categories, as explained above.

57.    The delay in adjudication threatens to disrupt Dr. Elsehmawy's career development and could delay or otherwise complicate his ability to adjust status and eventually apply for naturalization.

58.    The uncertainty surrounding a J-1's status can have harmful effects.  Employers of physicians are typically reluctant to consider applicants whose ability to remain in the United States is uncertain.  Furthermore, the lack of a J-1 waiver shuts Dr. Elsehmawy out of the job market.  A resulting period of forced unemployment would be devastating to him.  A lengthy gap in his work history, and the resulting degradation of his skills as a family medicine specialist, would further harm his chances of success in his career.  This would harm him as well as the U.S. public interest.

59.    Additionally, as mentioned above, Plaintiffs are married and wish to start a family.  The delay in adjudicating Plaintiffs' waiver application not only threatens these interests but increases the likelihood that Dr. Elsehmawy will have to leave the United States, exposing Dr. El-Jarrah to the exceptional hardships described in the waiver application.  The timely granting of a waiver would prevent these harms.

60.    USCIS and DOS have unreasonably failed to adjudicate Dr. Elsehmawy's I-612 exceptional hardship waiver application.  This case has already taken well over the amount of time expected by Congress in 8 U.S.C. § 1571(b).  The Plaintiffs request that this Court order USCIS and DOS to adjudicate the I-612 exceptional hardship waiver application without further delay.

16

## VII.    CAUSE OF ACTION

61.    The Plaintiffs are entitled to have their I-612 waiver case adjudicated.  They have submitted all necessary evidence establishing that Dr. Elsehmawy meets the requirements for eligibility for an I-612 exceptional hardship waiver application, and the application was approvable as filed.

62.    The Defendants have sufficient information to determine Dr. Elsehmawy's eligibility for an I-612 exceptional hardship waiver pursuant to applicable requirements. Notwithstanding, Defendants USCIS and DOS have unreasonably delayed and failed to adjudicate his waiver application for over nineteen months, thereby depriving the Plaintiffs of their right to a decision on their application and the peace of mind to which they are entitled.

63.    As set forth above, the unreasonable delay in the adjudication of Dr. Elsehmawy's application could cause him to run out of nonimmigrant visa status.  This could have permanent and irreparable consequences for Dr. Elsehmawy and Dr. El-Jarrah, both personally and professionally.

64.    The Defendants' inaction in the Plaintiffs' case has caused an inordinate and unfair amount of stress and expense for the Plaintiffs, who are entitled to a decision on Dr. Elsehmawy's I-612 waiver application without further unreasonable delay.

## VIII.   CLAIMS

65.    A mandamus plaintiff must demonstrate that: (1) he or she has a clear right to the relief requested; (2) the defendant has a clear duty to perform the act in question; and (3) no other adequate remedy is available.  *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002); *Citizens for Ethics and Responsibility in Wash. v. Cheney*, 593 F. Supp. 2d 194, 219 (D.D.C. 2009); *see also Liu*, 509 F. Supp. 2d at 10 (holding, in mandamus suit alleging unreasonable

agency delay, that "the statutory duty involved [in such cases] . . . does not specify what course of action shall be taken.  Rather, regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice") (quoting *Sierra Club v. Thomas*, 828 F.3d 783, 794 (D.C. Cir. 1987)); *Aslam*, 531 F. Supp.  2d at 743 ("[T]he Court concludes that CIS has a legal obligation to adjudicate Aslam's petition within a reasonable period of time.").  The Plaintiffs clearly meet all three of these criteria.

66.    The Plaintiffs have fully complied with all the statutory and regulatory requirements for seeking an I-612 exceptional hardship waiver application, including the submission of all necessary forms and supporting documents.  *See* 8 U.S.C. § 1182(e) (describing the waiver application process); 22 C.F.R. § 41.63(b) (describing a waiver based on exceptional hardship); 8 C.F.R. § 212.7(c) (detailing the requirements for an exceptional hardship waiver); *see also* 8 C.F.R. § 103.2(a) (describing general requirements for filing a form, benefit request, or other document to DHS, saying "USCIS will consider a benefit request received and will record the receipt date," and noting that requests will be rejected with no filing date if it is not properly filed); 8 C.F.R. § 103.2(b) (explaining that USCIS will evaluate evidence of eligibility or ineligibility and has the discretion to issue a request for evidence or notice of intent to deny).

67.    Thus, they have a clear right to the relief requested, the adjudication of Dr. Elsehmawy's waiver application under the INA, because they filed his application properly, were issued a receipt notice, and have not received any requests for evidence or notices of intent to deny.  *See also Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988) (quotations and citations omitted) (saying that the issuance of a writ of mandamus must be based on a "clear and indisputable right"); *Barnhart*, 292 F.3d at 784 (same); *Matter of Sealed Case*,

18

151 F.3d 1059, 1063 (D.C. Cir. 1998) (holding that mandamus is an appropriate remedy whenever a party demonstrates a clear right to have an action performed by a government official who refuses to act and that no other adequate means to attain the relief exist).

68.    The Defendants also have a clear duty to adjudicate Plaintiffs' waiver application. Both the regulations and the INA provide numerous examples of duties owed by USCIS in the adjudication of benefit applications.  8 U.S.C. § 1103 provides that "[t]he Secretary of Homeland Security *shall* be charged with the administration and enforcement of this [Act] and all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1) (emphasis added).  The Code of Federal Regulations provides that an applicant "*shall* be notified of the decision, and if the application is denied, of the reasons therefor and of the right of appeal in accordance with the provisions of part 103 of this chapter." 8 C.F.R. § 212.7(c)(11) (emphasis added).  The regulations further provide:

> If the Secretary of Homeland Security (Secretary of DHS) determines that compliance with the two-year home-country residence and physical presence requirement would impose exceptional hardship upon the spouse or child of the exchange visitor, or would subject the exchange visitor to persecution on  account of race, religion, or political opinion, the Secretary of DHS *shall* transmit a copy of his determination together with a summary of the details of the expected hardship or persecution, to the Waiver Review Division, in the Department of State's Bureau of Consular Affairs.

22 C.F.R. § 41.63(b)(2)(i) (emphasis added).

69.    22 C.F.R. § 41.63(b)(2)(ii) states that "the Waiver Review Division *shall* review the program, policy, and foreign relations aspects of the case, make a recommendation, and forward it to the appropriate office at DHS" (emphasis added).  The language of the statute is clear, and the above-cited regulations are mandatory, not discretionary; the Defendants have a clear duty to adjudicate the applications for I-612 waivers pending before them.

70.     The Defendants USCIS and DOS have unreasonably failed to adjudicate Plaintiffs' I-612 waiver application for over twenty months, well over the amount of time in which Congress expects benefit applications like this to be adjudicated under 8 U.S.C. § 1571(b), thereby depriving the Plaintiffs of their rights under 8 U.S.C. § 1182(e).  Pursuant to 5 U.S.C. §§ 555(b) and 702 (APA), "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added).

71.     The Defendants owe the Plaintiffs a duty to adjudicate Dr. Elsehmawy's I-612 waiver application, pursuant to the INA and its implementing regulations, and have unreasonably failed to perform that duty.  *See, e.g.*, *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 761 (D.C. Cir. 1997) (issuing writ of mandamus to preclude government defendant "from excusing its own delay" in complying with a clear statutory obligation).

72.     The Plaintiffs also have no other adequate remedy to obtain adjudication of Dr. Elsehmawy's I-612 exceptional hardship waiver application, as explained above.  The only way that the Plaintiffs will be able to obtain a waiver of the two-year residence requirement so that they can petition for adjustment of status through the basis of their marriage is through the process outlined in 8 U.S.C. § 1182(e).

73.     The Court's intervention is also appropriate because the Defendants have failed to act within a reasonable time.  *See, e.g.*, *Sierra Club*, 828 F.3d at 794 (holding that "regardless of what course it chooses, the agency is under a duty not to delay unreasonably in making that choice"); *Northern States Power*, 128 F.3d at 760 ("Given DOE's repeated attempts to excuse its delay . . . we find it appropriate to issue a writ of mandamus . . . ."); *Liu*, 509 F.  Supp. 2d at 9-10 (holding that the APA requires the government to act within a reasonable period of time).  The

Plaintiffs have already waited over twenty months for the adjudication of Dr. Elsehmawy's I-612 exceptional hardship waiver application, far longer than Congress intended the adjudication of this kind of application to take.  This is an unacceptable and unreasonable delay.

74.     The Plaintiffs are entitled to action on Dr. Elsehmawy's long-pending waiver application because an unreasonable amount of time has passed since the application was filed. The Defendants have failed to carry out the adjudicative and administrative functions delegated to them by law, to the ongoing harm and prejudice to the Plaintiffs.

75.     The Defendants' delay is without justification and has forced the Plaintiffs to resort to this Court for relief, and the Plaintiffs are entitled to attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2).

## IX.     PRAYER FOR RELIEF

A.     Compel the Defendants and those acting under them to take all appropriate action to adjudicate Dr. Elsehmawy's I-612 exceptional hardship waiver application without further delay;

B.     Grant attorney's fees and costs of court to the Plaintiffs under the Equal Access to Justice Act ("EAJA"); and

C.     Grant such other and further relief as this Court deems proper.


Dated: February 26, 2025                     */s/ Brian Scott Green*
                                             Brian Scott Green
                                             West Virginia Bar ID # 8727
                                             Law Office of Brian Green
                                             9609 S. University Boulevard, #630084
                                             Littleton, CO 80130
                                             (443) 799-4225
                                             briangreen@greenusimmigration.com

                                             ATTORNEY FOR PLAINTIFFS